GISKAN SOLOTAROFF & ANDERSON LLP
217 Centre Street, 6th Floor
New York, New York 10013
(646) 964-9609
Jason L. Solotaroff
Amy E. Robinson
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

ASHLEY FOSTER,

                Plaintiff,                                  **COMPLAINT**

       -against-                                         Dkt. No.

CONSTRUCTION AND REALTY SERVICES GROUP, INC.,
TRADE OFF LLC, and RONALD LATTANZIO,

                Defendants.

------------------------------------------------------------------------X

Plaintiff Ashley Foster, by her attorneys Giskan Solotaroff & Anderson LLP, for her complaint against Defendants Construction and Realty Services Group Inc., Trade Off LLC, Trade Off Plus LLC and Ronald Lattanzio, alleges as follows:

**Preliminary Statement**

1. This is an action for sexual harassment, gender discrimination in violation of Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

2. Ms. Foster worked as a laborer for Defendants on various construction sites from 2013 until approximately November 2017. During her employment, Ms. Foster was severely sexually harassed by several of Defendants' supervisors.

## THE PARTIES

3. Plaintiff Foster is an African American woman who lives in Brooklyn, New York.

4. Defendant Construction and Realty Services Group Inc. ("CRSG") is a corporation organized under the laws of New York with its principal place of business in Lynbrook, New York.

5. Defendant Trade Off LLC ("Trade Off") is a corporation organized under the laws of Delaware with its principal place of business in Lynbrook, New York.

6. Defendant Trade Off Plus LLC ("Trade Off Plus") is a corporation organized under the laws of Delaware with its principal place of business in Lynbrook, New York

7. Trade Off and Trade Off Plus are divisions of CRSG. Trade Off, Trade Off Plus and CRSG (collectively "Defendants") have common ownership and directors, share management and human resources services, share payroll and insurance programs, have common employees and managers and share office space. Indeed, Trade Off and Trade Off Plus employees are covered under benefit plans in the name of CRSG.

8. Ronald Lattanzio, as he acknowledged in an article in Crain's New York Business on October 31, 2018,[1] is the owner of Trade Off and Trade Off Plus. On information and belief, Mr. Lattanzio owns Trade Off through his ownership of CRSG. Mr. Lattanzio lives in New York, New York. Also as acknowledged in the Crain's New York Business article, Mr. Lattanzio is actively involved in the operation of Trade Off and CRSG and has personal involvement in issues related to Ms. Foster's employment as well as involvement in determining Trade Off and CRSG's policies toward sexual harassment.

---

[1] https://www.crainsnewyork.com/real-estate/contractor-caught-crossfire-hudson-yards-fight

**VENUE AND JURISDICTION**

9. This Court has jurisdiction over Ms. Foster's Title VII claim pursuant to 28 U.S.C. § 1343 and § 1331. Ms. Foster filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on December 11, 2017. The EEOC issued a right to sue letter, attached hereto as Exhibit A, on November 2, 2018. Plaintiff Foster and Defendants CRSG Trade Off, and Trade Off Plus entered into an agreement to toll the statute of limitations on all of their claims during the period January 29, 2019 to March 29, 2019. This Court has jurisdiction over Ms. Foster's claims under the NYSHRL and the NYCHRL pursuant to 28 U.S.C. § 1367.

10. Venue is properly before this Court pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to the claim occurred in this District.

11. This Court has personal jurisdiction over Defendants because they operate businesses in New York State, conduct business in New York State, and employed Plaintiff within New York State.

**FACTS**

12. Ms. Foster worked at Trade Off from 2013 until approximately November 2017.

13. Ms. Foster worked for Trade Off and Trade Off Plus at construction sites including: Among the projects I worked on as a Trade Off employee are:

> 60 Furman Street
>
> North End
>
> South Fifth Street and Broadway
>
> 80 West End
>
> 20 East End

      37th and Broadway

      23rd and Broadway

      507 West 28th Street

      68 Charlton Street

      1 Wall Street

      55 Hudson Yards

14. Along with other female employees of Trade Off, Ms. Foster experienced regular sexual harassment on the job. Male workers, both employed by Trade Off and other contractors, would regularly make statements about Ms. Foster's physical appearance, about how the male workers would like to have sex with her, that the female employees did not belong on a construction site as well as a wide variety of other sexist and harassing comments.

15. Defendant's managers observed, failed to prevent, and participated in this harassment. Indeed, as set forth below, Defendant's managers were among the worst offenders, using their power over Ms. Foster and the other female employees to harass them, and to attempt to obtain sexual favors from them.

16. For example, Earl, the former general foreman for Trade Off, supervised me at the Long Island City project. Williams regularly implied Ms. Foster could advance at Trade Off by having sex with him. For example, on one occasion, Williams pulled Ms. Foster off of a project at lunch to assist with business at a bank. When Ms. Foster joked with Williams that he should give her some of the cash he was depositing, Williams responded by stating that Ms. Foster would be taken care of financially if she would have sex with him but instead "all you want to do is work."

17.     The worst of this harassment was at Trade Off Plus's worksite at 55 Hudson Yards. Within the first week of being assigned to 55 Hudson Yards in March of 2017, Ms. Foster realized that LaTroy Pollard, the Trade Off foreman, awarded easier work assignments and raises in exchange for sexual favors. Ms. Foster knew that Pollard and another female Trade Off worker were in a sexual relationship. This relationship was common knowledge on the jobsite and early in Ms. Foster's time at 55 Hudson Yards she walked in on them kissing in the shanty (Trade Off Plus's base of operations at the worksite). Pollard awarded this worker pay raises and easier work assignments.

18.     Pollard and his cousin Albert Thomas, the deputy foreman, regularly harassed Ms. Foster. From the day Pollard was hired, before he was appointed foreman, he would always make sexually inappropriate comments to Ms. Foster.  At 55 Hudson Yards, every morning when I came to work Thomas would make sexual comments to Ms. Foster, such as  "What's up with that? Meow."

19.     On one occasion Thomas text messaged Ms. Foster an unsolicited picture of his penis.

20.     On multiple occasions Pollard, unsolicited and without Ms. Foster's consent, exposed his penis to her at 55 Hudson Yards. On one occasion, at the end of the work day, Ms. Foster returned to the work area. Pollard was in the room and exposed his penis to Ms. Foster.

21.     On a second occasion, Ms. Foster texted Pollard to let him know she needed to leave work early to attend to her sister who has stage four breast cancer.  Ms. Foster finished the work I needed to get done before lunch and Pollard asked her to see him in the shanty before she left. When Ms. Foster entered the shanty, Pollard exposed his penis to her.

22.     In August 2017, Ms. Foster missed a day of work because of her sister's illness and failed to notify Trade Off Plus.  Pollard terminated her employment even though male employees regularly missed work without notifying the company and suffered no consequences. When Ms. Foster discussed

her termination with Pollard, she admitted it was a mistake to miss a day of work without calling out but added that Pollard had also made mistakes in his sexual harassment of her at the jobsite.

23. When Ms. Foster came to collect her things from the job site, Pollard told her he had changed his mind about firing her and suggested she come back to work at 55 Hudson Yards.  Pollard pressured Ms. Foster to go talk with him in the shanty, where he had previously made sexual advances toward her, which Ms. Foster refused.

24. That same day Ms. Foster spoke with Jason Abadie, the Vice President of Operations at Trade Off. Ms. Foster told Abadie about the sexual harassment she had endured at the jobsite for the last several months. Mr. Abadie promised to investigate the situation and referred Ms. Foster to another job site for work. Mr. Abadie failed to provide Ms. Foster with any information concerning his purported investigation.

25. In November 2017, Ms. Foster stopped working for Trade Off.

## FIRST CLAIM FOR RELIEF
(Sexual Harassment in Violation of Title VII Against CRSG, Trade Off and Trade Off Plus)

26. Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

27. Defendants discriminated against, and harassed Plaintiff in the terms and conditions of her employment, based on her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

## SECOND CLAIM FOR RELIEF
(Sexual Harassment in Violation of NYSHRL Against All Defendants)

28. Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

29. Defendants discriminated against, and harassed Plaintiff in the terms and conditions of her employment based on her sex in violation of the NYSHRL.

### THIRD CLAIM FOR RELIEF
(Sexual Harassment in Violation of NYCHRL Against All Defendants)

30. Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

31. Defendants discriminated against, and harassed Plaintiff in the terms and conditions of her employment based on her sex in violation of the NYCHRL.

WHEREFORE, Plaintiff demands judgment:

1. Enjoining Defendant from harassing Plaintiff on the basis of her sex, in the terms and conditions of her employment;
2. Awarding Plaintiff back pay;
3. Awarding Plaintiff compensatory damages, including but not limited to damages for emotional distress;
4. Awarding Plaintiff punitive damages;
5. Awarding reasonable attorneys' fees, costs, and expenses, and

Granting such other legal and equitable relief to the Plaintiff as the Court may deem just and equitable.

### JURY DEMAND

Plaintiff demands trial by jury of all issues as of right by a jury.

Dated:   New York, New York
        April 4, 2019

                                GISKAN, SOLOTAROFF & ANDERSON LLP

                           s/_____
         By:   Jason L. Solotaroff
                  Amy E. Robinson
                  217 Centre Street
                  New York, New York 10013
                  646-964-9609
                  jsolotaroff@gslawny.com
                  arobinson@gslawny.com
                  *ATTORNEYS FOR PLAINTIFF*